## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**LOMACK THOMPSON**

    **Petitioner,**

**v.**                                                    **Case No. 8:17-cv-3016-T-36AAS**

**SECRETARY, Department of Corrections,**

    **Respondent.**

    _____/

## O R D E R

This cause comes before the Court on Lomack Thompson's petition for the writ of
habeas corpus under 28 U.S.C. § 2254. (Doc. 1) Thompson challenges his state conviction
for trafficking in hydrocodone. Upon consideration of the petition (Doc. 1), the response
(Doc. 9), and the reply (Doc. 12), and in accordance with the *Rules Governing Section 2254 Cases
in the United States District Courts*, the petition will be **DENIED**.

### Facts[1]

While working undercover Detective William Sims purchased thirty pills containing
hydrocodone from Thompson. The transaction was video recorded by Detective Sims.
During the transaction Detective Sims initiated a discussion with Thompson in which
Thompson agreed to sell Detective Sims more pills in the future. Thompson was ultimately
arrested and charged with trafficking between 14 grams and 28 grams of illegal drugs. A jury
convicted Thompson and he was sentenced to the mandatory minimum of fifteen years

---

[1] This factual summary derives from Thompson's briefs on direct appeal and the record. (Respondent's
Exhibits 2, 4, 6, 7, 24a, and 24b)

imprisonment. The state appellate court affirmed both Thompson's conviction and sentence and the denial of his state Rule 3.850 motion for post-conviction relief. (Respondent's Exhibits 9 and 22)

## Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - - the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law,

2

> as determined by the Supreme Court of the United States."
> Under the "contrary to" clause, a federal habeas court may grant
> the writ if the state court arrives at a conclusion opposite to that
> reached by this Court on a question of law or if the state court
> decides a case differently than this Court has on a set of
> materially indistinguishable facts. Under the "unreasonable
> application" clause, a federal habeas court may grant the writ if
> the state court identifies the correct governing legal principle
> from this Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 526 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170,

3

181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating

state-court rulings, which demands that state-court decisions be given the benefit of the doubt'

. . . .") (citations omitted).

### Standard for Ineffective Assistance of Counsel

Thompson claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he

cases in which habeas petitioners can properly prevail on the ground of ineffective assistance

of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995)

(*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155

F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984),

governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well
> settled and well documented. In *Strickland v. Washington*, 466
> U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme
> Court set forth a two-part test for analyzing ineffective assistance
> of counsel claims. According to *Strickland*, first, the defendant
> must show that counsel's performance was deficient. This
> requires showing that counsel made errors so serious that
> counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant must
> show that the deficient performance prejudiced the defense. This
> requires showing that counsel's errors were so serious as to
> deprive the defendant of a fair trial, a trial whose result is reliable.
> *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*,

466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . .

to address both components of the inquiry if the defendant makes an insufficient showing on

one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of

ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have

rendered adequate assistance and made all significant decisions in the exercise of reasonable

professional judgment." *Strickland*, 466 U.S. at 690.   "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  466 U.S. at 690.

Thompson must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  466 U.S. at 691.  To meet this burden, Thompson must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  466 U.S. at 690–91. Thompson cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Under 28 U.S.C. § 2254(d) Thompson must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 106. *See also Pinholster*, 563 U.S. at 202 (a petitioner must overcome this "'doubly deferential' standard of *Strickland* and [the] AEDPA"), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is 'doubly deferential.'"), *cert. denied*, 134 S. Ct. 191 (2013).

6

**Ground One**

In his sole ground for relief Thompson contends that "[t]he misconduct of law enforcement purchasing hydrocodone pills took away the ability of the trial court to give the accused a fair and impartial trial." (Doc. 1 at 6)  Thompson argues that the detective to whom he sold the drugs was not charged with a crime although he "is equally guilty as the supplier (the Defendant)." (*Id*.)  Thompson argues that by allowing his case to proceed, the trial court "abandon[ed] its neutral position as arbitrator between the laws of the state and in doing so, . . . require[d] the court to become an advocate for the state and law enforcement [,] which deprives the accused of a fair and impartial trial," resulting in a violation of his federal constitutional right to equal protection.

Thompson attaches to his petition five additional pages entitled "Brief Claim for Relief" in which he states that "[i]n Defendant's claim for relief I'm alleging ineffective assistance of counsel . . . ." (Doc. 1 at 18)  Thompson alleges that "counsel should have file[d] a pretrial motion to dismiss all charges based on the misconduct" of both he and the detective to whom he sold the hydrocodone pills.  (Doc. 1 at 19)  Thompson argues that counsel's "failure to file [a] motion to dismiss fail[ed] to protect her client['s] equal protection rights" and "deprived the accused of due process of law." (Doc. 1 at 19–20)  Thompson also argues that the detective's alleged misconduct "manipulated the court when it came to the sentencing guidelines" and that sections 893.13 and 893.135, Florida Statutes, "violate due process as applied." (Doc. 1 at 20)  Finally, Thompson asserts that "counsel knew or should have known her client could not receive a fair an[d] impartial jury." (Doc. 1 at 21)  He argues that "when the government [is] a part of the wrongdoing[,] such conduct requires the jury to

show bias against the accused in order to convict which deprive[d] the accused [of] due process of law to a fair trial." (*Id.*)

Thompson's allegations appear to be a combination of several grounds that he presented to the state courts in either his direct appeal or in his state Rule 3.850 motions. Affording the petition a generous interpretation, *see Haines v. Kerner*, 404 U.S. 519 (1972), and to the extent that Thompson attempts to articulate several independent bases for relief,[2] this Court considers each allegation as follows:

**Equal protection claim**

To the extent that Thompson alleges that he was denied his federal rights to equal protection and a fair trial because the detective to whom he sold the hydrocodone pills was not charged with a crime, he cannot obtain relief. The state appellate court rejected this ground in Thompson's direct appeal. (Respondent's Exhibits 2, 8, 10)

Thompson was charged with trafficking in illegal drugs under section 893.135, Florida Statutes. (Respondent's Exhibit 24a at 12) Section 893.135 includes an exception for law enforcement officers as follows:

> The provisions of subsections (1)-(8) are not applicable to the delivery to, or actual or constructive possession for medical or scientific use or purpose only of controlled substances by, persons included in any of the following classes, or the agents or employees of such persons, for use in the usual course of their business or profession or in the performance of their official duties:
>
> . . . .
>
> (h) Law enforcement officers for bona fide law enforcement purposes in the course of an active criminal investigation.

---

[2] *See Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992) (instructing "the district courts to resolve all claims for relief raised in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254").

Accordingly, under state law, the detective was not subject to prosecution for purchasing the drugs while performing his official duty.   Thompson establishes neither a federal equal protection violation nor a federal due process violation.   Consequently, Thompson fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts by rejecting this ground on direct appeal.   *See* 28 U.S.C. § 2254(d)(1), (d)(2).

### Ineffective assistance of counsel - failure to move to dismiss charges

Thompson alleges that his trial counsel rendered ineffective assistance by not moving to dismiss the charges against him.   He argues that counsel "fail[ed] to protect her client['s] equal protection rights" and "deprived the accused of due process of law."   (Doc. 1 at 19–20)   When Thompson presented this ground to the state post-conviction court in his original Rule 3.850 motion he simply argued that his trial counsel rendered ineffective assistance by not filing "any pre-trial motions."   (Respondent's Exhibit 11 at 3)   The state post-conviction court concluded that "it is unclear whether Defendant is alleging counsel should have only adopted the *pro se* motions he attaches to his motion for postconviction relief, or whether Defendant is alleging counsel should have filed additional pretrial motions."   (Respondent's Exhibit 14 at 3)   The court dismissed this ground and gave Thompson an opportunity to clarify his allegations.   In his amended Rule 3.850 motion Thompson asserted that his trial counsel should have moved "to dismiss the charges that occurred after the . . . initial violation."   (Respondent's Exhibit 15 at 4)   Thompson claimed that "[c]ounsel knew or should have known that the Defendant could not and did not get a fair trial, therefore making it necessary for counsel to file a motion to dismiss the case . . . based on sentencing manipulation stemming from Detective Sims['s] failure to arrest the Defendant on the initial charged

offense." (Respondent's Exhibit 15 at 5)  The state post-conviction court again dismissed the ground as facially insufficient.[3] (Respondent's Exhibit 16 at 5)

Thompson filed a second amended Rule 3.850 motion in which he alleged that "his due process rights were violated by the outrageous conduct perpetrated by Detective Sims and that trial counsel should have filed a motion to dismiss under two different theories.  Number one for entrapment.  The second would be for sentencing manipulation.  Both actions by LEO

---

[3] The state post-conviction court concluded (Respondent's Exhibit 16 at 5) (court's record citation omitted):

> Defendant contends that his counsel should have argued that had the police properly arrested Defendant after his first law violation, his subsequent law violations would not exist. Defendant argues had his counsel raised this motion to dismiss it is likely that his five other cases would have been dismissed and he would have been sentenced to only three years [in] prison with a three-year minimum mandatory sentence.
>
> After reviewing the allegations, the court file, and the record, the Court notes that:
>
>> If the actions of a law enforcement officer amount to a denial of a defendant's right to due process, dismissal of the charges may be warranted.
>>
>> . . . .
>>
>> The rule applies regardless of the defendant's predisposition and serves to check outrageous police conduct. This rule is narrowly applied and is limited to those instances where the government's conduct so offends decency or a sense of justice that the judicial power may not be exercised to obtain a conviction.
>
> *See State v. Taylor*, 784 So. 2d 1164 (Fla. 2d DCA 2001).
>
> The Court finds that Defendant has failed to allege a facially sufficient claim. Specifically, the Court finds that Defendant has failed to provide sufficient facts supporting a defense of outrageous police conduct which should result in a dismissal of the case or cases. As such, [this] [c]laim is dismissed without prejudice to any right Defendant may have to file within sixty (60) days a timely, properly sworn, facially sufficient claim. *Spera*, 791 So. 2d at 755.

violated defendant's due process right under the Fla. and U.S. constitution." (Respondent's Exhibit 17 at 4) Thompson appears to assert in his federal petition these same allegations of ineffective assistance of counsel that he presented to the state post-conviction court in the second amended Rule 3.850.

The state post-conviction court denied this ground of ineffective assistance of counsel as follows (Respondent's Exhibit 18 at 4) (court's record citations omitted):

> [I]t appears, among other things, that Defendant is alleging his trial counsel was ineffective for failure to raise a motion for downward departure at sentencing based on sentence manipulation by the police.
>
> After reviewing the allegations, the court file, and the record, the Court finds that to the extent that Defendant is alleging that his trial counsel was ineffective for failure to file a motion for downward departure during sentencing, the Court finds that Defendant was sentenced pursuant to statutorily imposed mandatory minimum sentences found in Section 893.135, Florida Statutes, in each case. As such, the Court had no authority to impose a downward departure. *See Kelley v. State*, 821 So. 2d 1255 (Fla. 4th DCA 2002). As such, any motion filed by Defendant's trial counsel in this regard would have been meritless. Therefore, Defendant cannot demonstrate deficiency or prejudice and [this claim] must be denied.
>
> The Court further finds that to the extent that Defendant is claiming that his counsel should have raised a pre-trial motion to dismiss based on entrapment, the Court finds that this claim is beyond the scope of Defendant's original claim . . . and is now untimely as a new claim and must be denied. *See* Fla. R. Crim. P. 3.850(e).
>
> Furthermore, the Court finds that to the extent that Defendant is attempting to argue that his counsel should have raised an entrapment defense at trial, the Court finds that it previously denied this claim in its February 3, 2016, Order.[4] As such, the Court finds that it will not address these allegations again.

---

[4] The state post-conviction court denied the allegation of ineffective assistance of counsel based on a failure to raise an entrapment defense as follows (Respondent's Exhibit 16 at 5–6) (court's record citation omitted):

To the extent that Thompson claims ineffective assistance of counsel based on counsel's failure under state law to either present an entrapment defense or move to dismiss the charges based on sentence manipulation, he cannot obtain relief. "[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). *See also Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (explaining that "[s]tate courts are the ultimate expositors of state law," and federal courts must abide by their rulings on matters of state law) (citations and footnote omitted). "Although an ineffective assistance of counsel claim is a federal constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law.'" *Will v. Sec'y, Dep't of Corr.*, 278 F. App'x 902, 908 (11th Cir. 2008) (citing *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)). *See also Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under state law had [the petitioner's counsel] done what [the petitioner] argues he should have done . . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

---

In Claim Four Defendant alleges trial counsel was ineffective for failure to raise a defense of entrapment at trial.

After reviewing the allegations, the court file, and the record, the Court finds that Defendant's claim lacks an adequate statement of facts to demonstrate a lack of predisposition. *See Jimenez v. State*, 993 So. 2d 553 (Fla. 2d DCA 2008). As such, no relief is warranted and Claim Four must be denied.

The basis for Thompson's ground of ineffective assistance of counsel is counsel's failure to either move to dismiss the charges under state law or move for a downward departure based on state sentencing guidelines. Both the state post-conviction court in rejecting Thompson's ground of ineffective assistance of counsel and the state appellate court by affirming that rejection have answered the question of what would have happened if counsel had performed as Thompson suggests. *See Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [the petitioner's counsel] objected to the introduction of [the petitioner's] statements based on [state law] — the objection would have been overruled . . . . Therefore, [the petitioner's counsel] was not ineffective for failing to make that objection."). The state courts' interpretation of state law is afforded deference. Thompson establishes neither deficient performance nor resulting prejudice from counsel's alleged error. *Strickland*, 466 U.S. at 691–92.

Even assuming, a*rguendo*, that Thompson's ineffective assistance of counsel claim is based on counsel's failure to argue a violation of federal law based on the alleged sentence manipulation, Thompson is not entitled to relief. "[S]entencing factor manipulation focuses on the government's conduct . . . [and] 'requires us to consider whether the manipulation inherent in a sting operation, even if insufficiently oppressive to support an entrapment defense, . . . or due process claim, . . . must sometimes be filtered out of the sentencing calculus.'" *United States v. Sanchez*, 138 F.3d 1410, 1414 (11th Cir. 1998) (quoting *United States v. Connell*, 960 F.2d 191, 194 (1st Cir. 1992)). "[T]o bring sting operations within the ambit of sentencing factor manipulation, the government must engage in extraordinary misconduct." *United States v. Ciszkowski*, 492 F.3d 1264, 1271 (11th Cir. 2007). "Government-

13

created reverse sting operations are recognized and useful methods of law enforcement investigation," so "[t]he standard for sentencing factor manipulation is high." *Ciszkowski*, 492 F.3d at 1271. "[The Eleventh Circuit] has never reduced a sentence on the basis of sentencing factor manipulation, *see United States v. Docampo*, 573 F.3d 1091, 1097–98 (11th Cir. 2009), so no binding precedent requires [the Eleventh Circuit] to countenance sentencing factor manipulation as a legitimate defense." *United States v. Lange*, 862 F.3d 1290, 1296 (11th Cir. 2017).

The record shows that counsel advised the judge at the sentencing hearing that she inquired of Detective Sims about re-visiting Thompson for additional drug purchases (Respondent's Exhibit 24b, transcript of sentencing hearing at 12):

> [COUNSEL]: Judge, we're asking for the Court to impose a 15-year minimum mandatory. There are several cases that are before the Court; however, these are cases where Detective Sims admittedly went back on several occasions. I asked —
>
> THE COURT: I know that and I wasn't real happy with that either.
>
> [COUNSEL]: I asked him during deposition exactly what the purpose was of him going back on several occasions —
>
> THE COURT: And what did he say?
>
> [COUNSEL]: Basically he said that Mr. Thompson was a link between other individuals so he was trying to get to other people through Mr. Thompson —
>
> THE COURT: Oh.
>
> [COUNSEL]: — so he had to keep the lines of communication open through Mr. Thompson to get to other individuals.

Thompson presents no evidence of outrageous government conduct that would implicate due process concerns. Thompson likewise presents no basis upon which counsel could have successfully moved for either dismissal of the charges or a downward departure

based on sentencing manipulation.   The fifteen-year sentence Thompson received was mandatory under Florida law.   *See* Fla. Stat. § 893.135(1)(c).   The state post-conviction court cited Florida authority providing that a sentencing court cannot depart from this mandatory term absent a recommendation from the State.   *See Kelley v. State*, 821 So. 2d 1255 (Fla. 4th DCA 2002).   The prosecutor made no such recommendation in Thompson's case and, in fact, asked for a twenty-year sentence based on Thompson's prior convictions for drug possession and delivery.   (Respondent's Exhibit 24b, transcript of sentencing hearing at 4)   Thompson fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground.   28 U.S.C. § 2254(d)(1), (d)(2).

Accordingly, Thompson's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. The Clerk is directed to enter a judgment against Thompson and **CLOSE** this case.

### DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

**IT IS FURTHER ORDERED** that Thompson is not entitled to a certificate of appealability.   A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.   28 U.S.C. § 2253(c)(1).   Rather, a district court must first issue a certificate of appealability ("COA").   Section 2253(c)(2) limits the issuing of a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."   To merit a certificate of appealability, Thompson must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise.   *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).   Because he fails to show that reasonable jurists

would debate either the merits of the claims or the procedural issues, Thompson is entitled to neither a certificate of appealability nor leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Thompson must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Tampa, Florida on February 22, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

All parties of record including unrepresented parties, if any